**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **HUSAM ODEH** | **CIVIL ACTION** |
| **VERSUS** | **NO. 19-13212** |
| **TYRONE BUTLER, ET AL.** | **SECTION: "P" (4)** |

## ORDER AND REASONS

Before the Court is the Motion for Summary Judgment[1] filed by Defendants, Kirt Arnold, Tyrone Butler, and Donald Juneau.[2]  Plaintiff, Hasem Odeh, opposes the motion.[3]  Considering the parties' briefing and the applicable law, **IT IS ORDERED** that the Motion for Summary Judgment is **GRANTED**.

## I.      BACKGROUND

On October 18, 2018, Plaintiff attended his son's cross-country track meet at N. Arnoult Road and River Road on the east bank of the Mississippi River in Jefferson Parish.[4]  Plaintiff, who was running late, parked his car on the River Levee.[5]  Arnold, an officer with the East Jefferson Levee District Police, was patrolling the River Levee on October 18, 2018 and noticed three vehicles parked on the levee in violation of Louisiana Revised Statute 38:213(A), which provides, in relevant part: "No person shall ride, drive, or haul upon the public levees."[6]  Arnold testified that, because of the glare on the windshields, he was unable to see whether the vehicles were occupied, so he made three pages on his Public Address System.[7]  Arnold saw movement in one of the cars, but testified the occupant of the vehicle did not respond to his page.[8]  Arnold pulled

---

[1] R. Doc. 109.
[2] Michael Rosenbohm was also named as a defendant in Odeh's complaint but has since been dismissed.  R. Doc. 128.
[3] R. Doc. 130.
[4] R. Doc. 40 at ¶ 11.
[5] *Id.*
[6] R. Doc. 109-3 at 2; *see also* La. R.S. § 38:213(A).
[7] R. Doc. 109-3 at 3.
[8] *Id.*

up to the driver's side of the occupied vehicle and told Odeh, who was inside the vehicle, he could

not park on the levee.[9]  Odeh told Arnold he was going to take pictures of his son who was running

in the cross-country meet and did not comply with Arnold's instruction to move his vehicle off the

levee.[10]  Arnold continued to tell Odeh he could not park on the levee until Odeh eventually moved

his vehicle, albeit to another location on the levee.[11]  When Arnold again told Odeh he needed to

move his car, Odeh "started getting more agitated," and began walking up the levee, ignoring

Arnold's instruction.[12]  At that point, Arnold called Rosenbohm and Menieur, as well as his

supervisor, Butler, who all arrived separately as Odeh was walking back down the levee to his

vehicle.[13]  After arriving on the scene, Butler approached Odeh and twice asked him whether

Arnold had asked him to move his car, but Odeh ignored Butler both times.[14]  Butler began walking

towards Odeh's vehicle with his ticket book and, at the same time, Odeh began walking down the

levee and got in his vehicle but did not move his vehicle.[15]  Ultimately, Odeh moved his car a

second time—this time to a location off the levee—and Butler wrote him a ticket for driving on

the levee and failing to cooperate with police after asking him "3, maybe 4 times" to move his

vehicle.[16]

Following the October 18, 2018 incident, Odeh filed a citizen's complaint against Butler

and Arnold.  Juneau, the head of the Internal Affairs ("IA") investigation, received statements from

the officers and reviewed the statements for consistency.[17]  Juneau concluded the officers'

---

[9] *Id.* at 3-4.
[10] *Id.* at 4.
[11] *Id.* at 4-5.
[12] *Id.* at 6.
[13] *Id.* at 6-7.
[14] *Id.* at 13.
[15] *Id.* at 14.
[16] *Id.* at 8, 16.
[17] R. Doc. 109-6 at 3-4.

statements about the interaction were consistent and ultimately determined Odeh's complaint lacked merit.[18]

On October 21, 2019, Odeh filed suit in this Court against Defendants for deprivation of his civil rights under 42 U.S.C. § 1983, for conspiracy to interfere with his civil rights under 42 U.S.C. § 1985(3), and for state law claims of gross negligence and intentional tort.[19]  When Odeh filed suit, his state court criminal trial was scheduled for March 26, 2020, and on March 13, 2020, Judge Guidry granted Defendants' motion to stay this matter until Odeh's state court proceedings were resolved after finding *Heck v. Humphrey*, 512 U.S. 477, 487 (1994), "may bar Plaintiff's recovery [for his civil action] if he is convicted in [state court]."[20]

On May 26, 2021, Odeh was convicted in the First Parish Court for the Parish of Jefferson for riding on a levee in violation of Louisiana Revised Statute Section 38:213 and failing to obey the direction of a traffic officer in violation of Louisiana Revised Statute Section 32:56.  After Odeh exhausted his appeals process, the Court lifted the stay of these proceedings.[21]  On July 3, 2023, Defendants filed this motion for summary judgment as to all claims against them.[22]

## II.   LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[23]  A party seeking summary judgment must show there is no genuine dispute of fact by citing specific parts of the summary judgment materials or by showing that the adverse party cannot produce admissible evidence to support their alleged facts.[24]  A party opposing summary judgment must set forth

---

[18] *Id.*; *see also* R. Doc. 109-1 at 6.
[19] R. Docs. 1 and 40.
[20] R. Doc. 18 at 3-4.
[21] R. Doc. 34.
[22] R. Doc. 109.
[23] FED. R. CIV. P. 56(a).
[24] FED. R. CIV. P. 56(c).

specific facts showing there is a genuine issue of material fact that must be resolved at trial.[25] "[U]nsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[26]

While typically the movant bears the initial burden of demonstrating the absence of a material fact, a good faith assertion of qualified immunity alters the usual summary judgment burden of proof, shifting the burden to the plaintiff to show that the defendant is not entitled to the defense.[27]

## III.   LAW AND ANALYSIS

### A. Odeh's Section 1983 claims

Odeh, who is Arab and was born in Palestine,[28] brings substantive due process and equal protection claims against Defendants under the Fifth and Fourteenth Amendments, alleging that (1) Butler and Arnold cited him for parking violations but failed to cite non-Arab parents for the same conduct; (2) Butler, Arnold, and Juneau conspired to cover up the illegality of Odeh's citations; and (3) Juneau incompetently handled the IA investigation into Odeh's accusations of misconduct.[29]

Defendants first argue that these claims must fail because Odeh is barred from bringing them in a Section 1983 action by the Supreme Court's decision in *Heck v. Humphrey*.[30] Alternatively, Defendants argue, these claims are barred by the Full Faith and Credit Statute

---

[25] *Id.*

[26] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) (quoting CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & MARY K. KANE, FED. PRAC. & PROC.: CIV. § 2738 (2d ed. 1983)).

[27] *See Joseph on behalf of Est. of Joseph v. Bartlett*, 981 F.3d 319, 329–30 (5th Cir. 2020) (quoting *Orr v. Copeland*, 844 F.3d 484, 490 (5th Cir. 2016)).

[28] R. Doc. 40 at ¶ 1.

[29] *Id.* at ¶¶ 12-28.

[30] R. Doc. 109-1 at 9-14; 512 U.S. 477 (1994).

pursuant to the state court trial and appellate decisions on Odeh's criminal charges.[31]  Finally,

Defendants assert that they are entitled to qualified immunity on Odeh's federal law claims.[32]

As an initial matter, Odeh's Fifth Amendment due process claims must fail because "that

amendment pertains to federal, not state, actors."[33]  Nevertheless, this Court will examine Odeh's

substantive due process claims pursuant to the Fourteenth Amendment.

> i.     Does Heck *bar Odeh's Section 1983 claims?*

Under *Heck*, a plaintiff's Section 1983 claims are barred if "a judgment in favor of the

plaintiff would necessarily imply the invalidity of his conviction or sentence."[34]  The determination

of whether civil claims are *Heck*-barred "is analytical and fact-intensive," requiring the court "to

focus on whether success on the [civil claim] requires negation of an element of the criminal

offense or proof of a fact that is inherently inconsistent with one underlying the criminal

conviction."[35]

Circuit courts have disagreed as to whether a Section 1983 claim for selective enforcement

necessarily calls into question the underlying conviction.  For example, the Third Circuit has found

that it does because such an argument, if successfully raised during the criminal trial, would have

prevented the conviction.[36]  Other courts have disagreed, noting that this kind of separate civil

rights suit does not necessarily impugn the conviction itself or challenge any elements of the

crime.[37]

---

[31] R. Doc. 109-1 at 11-12.
[32] *Id.* at 14-30.
[33] *Coleman v. Sellars*, 614 F. App'x 687, 689 (5th Cir. 2015) (citing *Jones v. City of Jackson*, 203 F.3d 875, 880 (5th Cir. 2000)).
[34] 512 U.S. at 487.
[35] *Bush v. Strain*, 513 F.3d 492, 497 (5th Cir. 2008) (citing *Ballard v. Burton*, 444 F.3d 391, 400-01 (5th Cir. 2006)).
[36] *Gibson v. Superintendent of N.J. Dep't. of Law and Pub. Safety Div. of State Police*, 411 F.3d 427, 440-41 (3d Cir. 2005), *overruled on other grounds*, *Dique v. N.J. State Police*, 603 F.3d 181 (3d Cir. 2010).
[37] *See, e.g.*, *Mordi v. Zeigler*, 870 F.3d 703, 707-08 (7th Cir. 2017).

Odeh has made it abundantly clear that he no longer contests his conviction.[38]  Moreover,

even if Odeh had not acquiesced to his conviction, Defendants have not shown how, if Odeh were

successful on his selective enforcement claim here, his prior conviction would be called into

question.  The remedy for Odeh's successful selective enforcement claim would be damages, not

the negation of his prior conviction.[39]  Odeh's claims related to the IA investigation likewise do

not implicate his criminal conviction and, thus, *Heck* does not stand in the way of Odeh's § 1983

claims.[40]

> ii.     *Does the Full Faith and Credit Statute bar Odeh's Section 1983 claims?*

The Full Faith and Credit Statute, 28 U.S.C. § 1738, requires federal courts to grant state

court decisions the same preclusive effect that the decision would have in the state courts from

which it came.[41]  Louisiana's res judicata law, Louisiana Revised Statute 13:4231, provides that

"[a] judgment in favor of either the plaintiff or the defendant is conclusive, in any subsequent

action between them, with respect to any issue actually litigated and determined if its determination

was essential to that judgment."[42]  Because the parties to this action are different than those that

appeared in the Louisiana state criminal proceedings, res judicata—and, by extension, the Full

Faith and Credit Statute—does not bar Odeh's Section 1983 claims here.[43]

> iii.    *Qualified immunity*

In order to defeat qualified immunity, a plaintiff "must show that there is a genuine dispute

of material fact and that a jury could return a verdict entitling the plaintiff to relief for a

---

[38] R. Doc. 130 at 6-7.

[39] R. Doc. 40 at 21.

[40] For the same reasons, *Heck* does not bar Odeh's § 1985 claims.

[41] *Conn. Bank of Com. v. Republic of Congo*, 309 F.3d 240, 248 (5th Cir. 2002).

[42] La. R.S. 13:4231(3).

[43] *See* R. Doc. 109-7 (*Louisiana v. Odeh*, 21-657 (La. Ct. App. 5 Cir. 1/3/21), 335 So.3d 977); *see also Burguieres v. Pollingue*, 2002-1385 (La. 2/25/2003), 843 So.2d 1049, 1054-55 (noting "the requirement in La. R.S. 13:4231 that the parties be the same in order for a second suit to be precluded by operation of res judicata . . ..").

constitutional injury."[44]  The plaintiff must further show that their "version of those disputed facts

[] also constitute a violation of clearly established law."[45]

a.   <u>Equal protection</u>

Odeh alleges that Butler and Arnold discriminated against him on the basis of his race and

national origin by selectively enforcing the levee parking law against him.[46] "It is clearly

established that the Equal Protection Clause of the Fourteenth Amendment prohibits intentional

racial discrimination"[47] and equally applies to "discrimination on the basis of national origin and

ethnicity."[48]  "To maintain an equal protection claim, a plaintiff typically alleges that he 'received

treatment different from that received by similarly situated individuals and that the unequal

treatment stemmed from a discriminatory intent.'"[49]  To establish discriminatory intent, the

plaintiff must show "the decision maker singled out a particular group for disparate treatment and

selected his course of action at least in part of the purpose of causing its adverse effect on an

identifiable group."[50]

In support of his equal protection claims against Butler and Arnold, Odeh submits an image

of the crowd gathered for the race, which he asserts shows "non-Arab similarly situated parents

also parked illegally close-by and visible."[51]  But the image does not show a single vehicle, and it

is impossible to conclude from the image which, if any, of the other parents parked their vehicles

---

[44] *Est. of Joseph*, 981 F.3d at 330.

[45] *Id.*

[46] R. Doc. 40 at ¶ 15.  Odeh's opposition brief does not argue his claim that Juneau committed a violation of his equal protection rights, R. Doc. 130 at 24-32, and does not point to any evidence supporting such a claim.

[47] *Lawrence v. Lawson*, 2023 WL 2969243, at *4 (E.D. La. Apr. 17, 2023) (quoting *Pree v. Wash. Cnty Bd. of Supervisors*, No. 16-CV-122, 2017 WL 473906, at *3 (N.D. Miss. Feb. 3, 2017)) (internal quotations omitted).

[48] *Gurrola v. Perry*, No. V-13-006, 2013 WL 1222398, at *1 (S.D. Tex. Feb. 11, 2023) (citing *Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 613 n.5 (1987)).

[49] *Club Retro, LLC v. Hilton*, 568 F.3d 181, 212 (5th Cir. 2009) (quoting *Taylor v. Johnson*, 257 F.3d 470, 473 (5th Cir. 2001)).

[50] *Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 412 (5th Cir. 2015) (quoting *Taylor*, 257 F.3d at 473) (internal quotations omitted).

[51] R. Doc. 130 at 23 (citing Ex. 14, R. Doc. 130-19).

7

on the levee.[52]  Odeh points to no evidence indicating that any other individual was asked to move

an illegally parked vehicle but refused.  To the contrary, Arnold testified that after he made his

initial request on the PA system for parents to move their vehicles off the levee, at least one other

parent complied without complaint.[53]  Moreover, at least one other vehicle was apparently ticketed

for parking on the levee.[54]  Odeh, on the other hand, explicitly ignored numerous instructions from

law enforcement officers to move his vehicle.[55]  Thus, Odeh fails to properly identify any similar

situated individuals who ignored instructions from police to move their vehicles but did not receive

tickets and, therefore, fails to meet his burden on his selective enforcement claim.[56]  Accordingly,

Butler and Arnold are entitled to qualified immunity.

b.  Substantive due process

"[I]n a due process challenge to executive action, the threshold question is whether the

behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to

shock the contemporary conscience."[57]  Odeh alleges that his substantive due process rights were

violated on account of the allegedly flawed IA inquiry into his discrimination claim.  Odeh

premises this claim on his allegation that Butler lied in his IA investigation statement about the

location from which he first observed Odeh parked illegally.[58]  Even assuming that Butler did not

tell the truth in his IA statement, Odeh does not explain the materiality of this transgression;

---

[52] R. Doc. 130-19.

[53] R. Doc. 109-3 at 9.

[54] *See* R. Doc. 130-16 at 1-2 (detailing a video of the interaction between Odeh and Butler, including Butler's explanation that a "maroon car" also received a ticket for parking on the levee).

[55] R. Doc. 130-5.

[56] The Court notes that Butler admitted to telling Odeh, "I don't know how you treat the police in the country you come from, however, the police are treated with respect in this country," R. Doc. 109-1 at 21, and that Odeh alleges Butler racially verbally assaulted him, R. Doc. 40 at ¶ 15.  While such statements could evince a discriminatory intent, Odeh has failed to show "some other conduct that deprives [him] of established rights," as discussed above, and such comments are therefore not actionable. *Williams v. Bramer*, 180 F.3d 699, 706 (5th Cir. 1999).

[57] *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998).

[58] R. Doc. 130 at 26.

instead, Odeh insists that Butler's "perjury" violates Odeh's constitutional rights.[59]    Odeh also

argues that Juneau violated his substantive due process rights by conducting a sham investigation

into his IA complaint and failing to uncover the inconsistencies in Butler's IA investigation

statement.[60]

Odeh cites no caselaw indicating that a court has ever found an officer's misconduct in an

IA investigation could implicate the complainant's constitutional rights.  Rather, Odeh argues that

Butler's "perjury" in his IA statement—and Juneau's failure to uncover it—constitutes a "novel,

but patently obvious" constitutional violation so egregious and shocking to the conscious as to

qualify as a constitutional violation.[61]    For this Court to recognize this alleged misconduct as

egregious and shocking to the conscious, as those terms are understood in a legal context, would

demote the Constitution to what the Supreme Court has called "a font of tort law."[62]    Indeed, the

very case upon which Odeh relies in making this argument, *Tyson v. City of Sabine*, involved an

allegation of gratuitous sexual assault committed by a law enforcement officer during a home

welfare check.[63]    That the alleged misconduct here and the alleged sexual assault in *Tyson* were

both supposedly "pre-meditated," as Odeh repeatedly notes, does not vault Butler's and Juneau's

alleged misconduct into the realm of consciousness-shocking behavior.

This Court certainly does not condone police officers manipulating internal investigations

to escape scrutiny from allegations of racial or national origin discrimination.  But Odeh's

allegations related to the IA investigation patently fail to shock the conscience as required to

---

[59] *Id.* at 13-14.
[60] *Id.* at 24-28.  Though Odeh's amended complaint, R. Doc. 40, appears to allege Arnold violated Odeh's substantive due process rights, Odeh's opposition brief makes no such argument and, in fact, implies Arnold was truthful in his IA investigation statement.  R. Doc. 130 at 25-26 (arguing that Butler's IA statement is contradicted by Arnold's and Rosenbohm's IA statements).
[61] R. Doc. 130 at 29.
[62] *Lewis*, 523 U.S. at 847 n.8.
[63] R. Doc. 130 at 29 (citing *Tyson v. City of Sabine*, 42 F.4th 508, 520 (5th Cir. 2022) (internal quotations omitted)).

sustain a Fourteenth Amendment substantive due process claim.  Accordingly, Defendants are entitled to qualified immunity on Odeh's Fourteenth Amendment substantive due process claims.

## B. Odeh's Section 1985 claim

As with his § 1983 claims, Odeh's Section 1985 claims must overcome Defendants' assertions of qualified immunity.  Under Section 1985, Odeh must show that Defendants (1) conspired; (2) for the purpose of depriving, either directly or indirectly, Odeh of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) took or caused action in furtherance of the conspiracy; which (4) injured Odeh or deprived him of his rights or privileges as a United States citizen.[64]  Odeh alleges that Defendants engaged in a conspiracy to nullify the IA investigation and suppress evidence of any discriminatory conduct during the levee incident.[65]

Odeh includes only a small handful of references to his Section 1985 conspiracy claim in his opposition brief.  Odeh argues that Arnold's IA investigation statement, in which Arnold stated that he did not hear Butler speak to Odeh, is undermined by a picture purportedly showing Arnold standing feet away from Butler and Odeh in the doorway of Odeh's vehicle.[66]  Odeh insists that this discrepancy indicates "Arnold was part of the alleged cover-up conspiracy to discredit plaintiff's Internal Affairs complaint about Arnold's racially motivated parking enforcement, and about the subsequent racial epithets angrily delivered by Butler."[67]  Odeh points to other instances in which Arnold testified that he did not hear the initial exchange between Butler and Odeh as further evidence of Arnold's participation in the alleged conspiracy.[68]  As to Juneau, Odeh insists

---

[64] *Shaw v. Villanueva*, 918 F.3d 414, 419 (
[65] R. Doc. 40 at ¶¶ 29-32.
[66] R. Doc. 130 at 20-21 (citing Ex. 5, R. Doc. 130-8 at 1).
[67] *Id.* at 20.
[68] *Id.* at 21 (referring to Arnold's testimony in Odeh's trial and Arnold's 2023 deposition).

that his failure to uncover inconsistencies in the IA investigation statements of Butler, Arnold, and others indicates that Juneau was complicit in the conspiracy to suppress evidence of Butler's discriminatory conduct.[69]

Odeh relies on nothing more than inference to support his claim that Defendants conspired to suppress the IA investigation.  Odeh provides no evidence of an agreement among Defendants to corrupt the investigation and fails to even allege that any Defendant engaged in the conspiracy because of a class-based animus, rather than a desire to cover up *any* misconduct, regardless of its nature.[70]  Accordingly, Defendants are entitled to summary judgment on Odeh's Section 1985 claims.

## IV.     CONCLUSION

For the foregoing reasons, Defendants' motion (R. Doc. 109) is **GRANTED**.

**IT IS FURTHER ORDERED** that Odeh's claims (R. Doc. 40) are **DISMISSED WITH PREJUDICE**.  Odeh has failed to defeat qualified immunity on his federal law claims, and the Court declines to exercise supplemental jurisdiction over his remaining supplemental state law claims.

**IT IS FURTHER ORDERED** that Odeh's pending Motion to Extend Discovery and Dispositive Motion Cutoff Dates (R. Doc. 101) is **DENIED AS MOOT**.

---

[69] *Id.* at 25-26.

[70] *Benningfield v. City of Houston*, 157 F.3d 369, 379 (5th Cir. 1998) (noting that a § 1985(3) claim must allege the conspiracy was motivated by class-based animus); *see also Hagan v. Houston Indep. Sch. Dist.*, 51 F.3d 48, 53-54 (5th Cir. 1995) ("To violate § 1985, [the defendant] must have had more than an awareness of the consequences of his actions; he had to have 'selected or affirmed a particular course of action at least in part because of, not merely in spite of, its adverse effects upon an identifiable group.'") (quoting *Bray v. Alexandria Clinic*, 506 U.S. 263, 271-72 (1993)) (other internal quotations omitted); *Vasudevan v. Administrators of Tulane Educ. Fund*, 706 F. App'x 147, 152 (5th Cir. 2017) (noting "the record does not show evidence of an agreement between [defendants], which is a necessary element of a conspiracy to violate civil rights under 42 U.S.C. § 1985(3)") (citing *Green v. State Bar of Tex.*, 27 F.3d 1083, 1089 (5th Cir. 1994)).

New Orleans, Louisiana, this 4th day of October 2024.

_____

**DARREL JAMES PAPILLION**
**UNITED STATES DISTRICT JUDGE**